MURDOCK, Justice.
 

 Samuel Anthony Brown and other heirs of Carnell Melton Brown (“the Brown heirs”) appeal from a judgment in favor of Jennie M. Melton and certain other heirs of Melvin Melton and Lula Melton (“the Melton heirs”). The judgment concerns a complaint the Melton heirs filed seeking the partition of real property pursuant to § 35-6-20, Ala.Code 1975; the Brown heirs and the Melton hems both own interests in the property. For the reasons discussed below, we dismiss the appeal.
 

 During them lifetime, Melvin Melton and Lula Melton acquired 223.5 acres of property in Perry County. The couple had eight children — including Jennie M. Melton (“Jennie”) and Carnell Melton Brown (“Carnell”). Upon the deaths of Melvin and Lula, their eight children inherited the property as tenants in common. On August 15, 1977, the children conveyed to Jennie by quitclaim deed 18 acres of the property, including part of the property on which Jennie had lived since she was 10 years old. On January 9, 1995, the children conveyed to Carnell and her husband, Henry Brown, 20 acres of the property. The 223.5 acres less the parcels conveyed to Jennie and Carnell and her husband are hereinafter referred to as “the subject property.”
 

 On January 7, 2003, the Melton heirs, who included Jennie, and many of the other heirs at law of Melvin and Lula and Betty Melton (“Betty”), who owned a one-sixteenth interest in the subject property,
 
 [1]
 
 filed a complaint against Carnell for a partition of the subject property pursuant to § 35-6-20, Ala.Code 1975.
 
 [2]
 
 The Melton
 
 *869
 
 heirs alleged that the subject property could be equitably divided in kind among the cotenants without a sale of the property. The original defendant, Carnell, answered the complaint and contended that the subject property could not be equitably divided, and she moved for a sale of the subject property and a division of the proceeds pursuant to § 35-6-100, Ala.Code 1975.
 
 [3]
 
 Subsequently, Betty asked to be aligned with Carnell as a defendant, and the trial court granted her request.
 

 Pending trial, several of the original Melton heirs and Carnell died.
 
 [4]
 
 Them respective heirs were substituted as parties to the action. Among Carnell’s heirs, i.e., the Brown heirs, is Carolyn Brown (“Carolyn”), who lives on the 20-acre parcel that was deeded to Carnell and her husband in 1995.
 

 On July 19, 2004, the Melton heirs filed a notice of joint election of moieties, requesting that their several moieties be considered one moiety, thereby having their portion of the subject property set apart as one undivided fractional share of the whole for all the Melton heirs.
 

 A trial commenced on September 19, 2005. Jennie testified on behalf of the plaintiffs concerning the nature and topography of the subject property. She stated that she had lived on the property adjoining the subject property since she was 10 years old and that she was very familiar with the subject property. Jennie generally described the subject property as follows;
 

 “It’s livable for anybody that wants to live there. It’s a wooded area, some parts of it, and some parts of it isn’t. There are hills in some areas, creeks in some areas. And some there are none.”
 

 Jennie also described several portions of the subject property in detail. She averred that she believed the 20-acre parcel adjoining the subject property that was deeded to Carnell and her husband (i.e., the parcel then owned by the Brown heirs) to be “the most valuable property,” but that in general no one parcel of the remaining property is “substantially more valuable” than any other. Jennie testified that she had consulted each of the plaintiffs and that it was them desire that their portion of the subject property be allotted as an undivided whole to all the Melton heirs.
 

 Regarding partitioning the property, Jennie testified as follows:
 

 “Q Now you have filed a petition in court asking the court to divide your father’s property.
 

 “A Right.
 

 “Q Do you feel that this property can be equitably divided?
 

 
 *870
 
 “A It can. It can. And all we are asking for is justice, that each family, each sibling or the sibling’s heirs have their share and them be satisfied. All we want is justice.
 

 [[Image here]]
 

 “Q Now Ms. Melton, in your contact with all the herns that you have testified about, is it the desire of the plaintiff[s] as far as dividing the property is concerned that the Court leave all of your interests together in one pot?
 

 “A Yes.
 

 “Q And if the Court does that, then the Court will only have to divide an interest out to the Browns, right, and Ms. Betty Melton?
 

 “A Correct.
 

 [[Image here]]
 

 “Q And the Court will only have to make provisions for a seven-acre plot for Ms. Brown [ — ] for the Browns?
 

 “A Right.
 

 “Q And a 13-acre plot for Ms. Betty Melton?
 

 “A Right.” “[hjilly or gully.” Regarding partitioning the property, Carolyn testified as follows:
 

 Carolyn was the first of two witnesses for the defendants. She testified that she is unemployed and that she stays at home taking care of her house and the land on which it is located. She averred that she has been living on a portion of the 20 acres belonging to the Brown heirs since 2000 and that she has personally seen most of the subject property. She claimed that the 18-acre parcel belonging to Jennie “is completely flat” and that Jennie “has the best of the land.”
 
 [5]
 
 Carolyn stated that there exists approximately 12 acres of flatland scattered in various places on the subject property and that the rest is
 

 “Q Is there any way on earth that that [property] can be equitably divided between eight people?
 

 “A There is no way, no way eight people can get equally — somebody is going to get slighted.
 

 “Q Is there any way it can be split in half?
 

 “A No way.
 

 “Q Is there any way it can be split two-thirds?
 

 “A No way, no way.
 

 “Q And you want this land to remain intact where either your family or they can buy the other one out?
 

 “A That’s all right.”
 

 On cross-examination, Carolyn was asked about her testimony that most of the land consists of hills and gullies.
 

 “Q Hills and gullies have very little value, would you think?
 

 “A That’s what I’m told.
 

 “Q And so if it’s all hills and gullies, it all has very little value?
 

 “A That’s what I’m told.
 

 “Q And if everybody got hills and gullies, everybody would be getting the same thing, wouldn’t they?
 

 “A Who wants gullies and hills? You know, they want something that’s going to be of value. You have got to be able to fill that in to even get a house on it.
 

 “Q But that’s all there is, is there not?
 

 “A Well, you have got some flat land. No, my aunt [Jennie] has got the best of it. She got 18 acres or 20 acres there of flat land, straight flat land all around. That’s the best property.”
 

 
 *871
 
 The second witness for the defense was Stan Kennie, who stated that he was qualified to speak about the subject property because he had hunted on it since 1991. Regarding partitioning the property, Ken-nie testified as follows:
 

 “Q ... In your judgment is there any way that this land can be split up eight ways and be fan1 to the eight people?
 

 [[Image here]]
 

 “A Sure, it can be split.
 

 “Q And be fair?
 

 [[Image here]]
 

 “Q Is there any way that all of this land, the flat and the gullies and the hills could be split and be fan1, everybody fair with it? It can’t be equitably split up and be fair, can it?
 

 “A Anything can be split. But whether it can be fair, that’s a different story. You can’t use none of that.
 

 “Q It would be hard as heck to split that up, wouldn’t it?
 

 “A It would be very hard.”
 

 On July 21, 2006, based on the testimony of the witnesses and certain photographs that had been introduced at trial, the trial court entered its judgment. The trial court determined that the children of Melvin Melton and Lula Melton had intended the 18 acres they deeded to Jennie in 1977 and the 20 acres they deeded to Carnell and her husband “would be a credit against the one-eighth share of the Grantees’ inheritance of 27 acres, more or less.” Consequently, it concluded that of the original 223.5 acres, 185.5 were the subject of the dispute — after the 18 acres deeded to Jennie and the 20 acres deeded to Car-nell and her husband were excluded.
 
 [6]
 
 Concerning whether the subject property could be equitably divided, the trial court’s order stated:
 

 “13. The Court finds from the testimony that those hems who wish to have the property sold are Betty Melton (l/16th interest or 13 acres, more or less), wife of Andrew Melton, deceased, and the 12 surviving children of Carnell Melton Brown and Henry Brown (l/96th interest or 7 acres, more or less) having previously deeded 20 acres.
 

 “Therefore, the Court finds that the property can be equitably divided.” (Emphasis omitted.) The trial court then ordered as follows:
 

 “1. That Betty Melton receive 13 acres, more or less[,] of the remaining 185 acres, more or less, and the surviving heirs of Carnell Melton Brown and Henry Brown receive 7 acres, more or less, of the remaining 185 acres, more or less.
 

 “2. The recipients may choose the acreage of their choice so long as the same is contiguous.”
 

 The Brown heirs filed a motion for a judgment as a matter of law or, in the alternative, for a new trial, pursuant to Rule 59, Ala. R. Civ. P. In accordance with Rule 59.1, Ala. R. Civ. P., the parties filed a written consent to extend the time for the trial court to rule on the post-judgment motion. Subsequently, the Melton heirs filed a purported withdrawal of their consent to extend the time for the trial court’s ruling on the Brown heirs’ postjudgment motion. Within 42 days from the date of the purported withdrawal of consent by the Melton heirs, the Brown hems filed a notice of appeal to the Court of Civil Appeals.
 
 [7]
 
 The Court of Civil Appeals transferred the appeal to this Court.
 

 
 *872
 
 Thereafter, this Court issued an order informing the trial court and the parties that the Melton heirs’ purported withdrawal of their consent to extend the time for the trial court to rule on the Brown heirs’ postjudgment motion was not effective because Rule 59.1, Ala. R. Civ. P., does not provide for such a maneuver. Accordingly, pursuant to Rule 4(a)(5), Ala. R.App. P., this Court held the Brown heirs’ appeal in abeyance pending a ruling by the trial court on the Brown heirs’ postjudgment motion. On March 11, 2009, the trial court entered an order denying the Brown heirs’ motion for a judgment as a matter of law or, in the alternative, for a new trial, pursuant to Rule 59, Ala. R. Civ. P.
 

 Notwithstanding the foregoing, we must dismiss the present appeal as being from a nonfinal judgment. In
 
 McGill v. McGill,
 
 888 So.2d 502 (Ala.Civ.App.2004), a divorce case in which the judgment provided, as to the property division, that “ ‘[tjhe [wife] shall make 2 lists and the [husband] shall pick which list he wants,’ ” 888 So.2d at 503, the Court of Civil Appeals explained:
 

 “The question whether a judgment is final is a jurisdictional question, and the reviewing court, on a determination that the judgment is not final, has a duty to dismiss the case.
 
 See Jim Walter Homes, Inc. v. Holman,
 
 373 So.2d 869, 871 (Ala.Civ.App.1979).
 

 “
 
 ‘A
 
 final judgment is a terminative decision by a court of competent jurisdiction which demonstrates there has been complete adjudication of all matters in controversy between the litigants within the cognizance of that court. That is, it must be conclusive and certain in itself.... All matters should be decided; damages should be assessed with specificity leaving the parties with nothing to determine on their own.’
 

 “Jewell v. Jackson & Whitsitt Cotton Co.,
 
 331 So.2d 623, 625 (Ala.1976). Accordingly, this court, in
 
 Grubbs v. Grubbs,
 
 729 So.2d 346, 347 (Ala.Civ.App.1998), held that a divorce judgment was not final where the distribution of the personal property had not yet been completed by the trial court and that this court therefore could not ‘know all the circumstances’ of that particular case.”
 

 McGill,
 
 888 So.2d at 504.
 

 The complaint in the present case sought a partition of the subject property. As of yet, a final order of partition has not been entered. As was true in
 
 McGill,
 
 “[t]here must be some final disposition of the ... property by the trial court before its judgment is final.”
 
 888
 
 So.2d at 505. See also Ala.Code 1975, § 85-6-22 (stating in regard to an action for partition in the circuit court that “[t]he court shall ascertain and declare the rights, titles and interests of all the parties to such action ... and shall give judgment according to the rights of the parties”).
 

 Accordingly, the appeal is dismissed.
 

 APPEAL DISMISSED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . The Mellon heirs own over a two-thirds interest in the subject property.
 

 [2]
 

 . Section 35-6-20 provides:
 

 “The circuit court shall have original jurisdiction to divide or partition, or sell for
 
 *869
 
 partition, any property, real or personal, held by joint owners or tenants in common; whether the defendant denies the title of plaintiff or sets up adverse possession or not; and the court in exercising its jurisdiction shall proceed according to the Alabama Rules of Civil [Pjrocedure and, where necessary, allow service of process by publication as prescribed therein.”
 

 [3]
 

 . Section 35-6-100 provides;
 

 “Upon the filing of any petition for a sale for division of any property, real or personal, held by joint owners or tenants in common, the court shall provide for the purchase of the interests of the joint owners or tenants in common filing for the petition or any others named therein who agree to the sale by the other joint owners or tenants in common or any one of them. Provided that the joint owners or tenants in common interested in purchasing such interests shall notify the court of same not later than 10 days prior to the date set for trial of the case and shall be allowed to purchase whether default has been entered against them or not.”
 

 [4]
 

 . Carnell’s husband also passed away.
 

 [5]
 

 . Jennie denied that her parcel is mostly flat.
 

 [6]
 

 . Neither the Brown heirs nor the Melton heirs dispute this finding.
 

 [7]
 

 . The Brown heirs are the only appellants in this action; Betty Mellon did not appeal the ruling of the trial court.